AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| MARCOS RENE SOTO | ) Case No. 21-6665-HUNT |
|  | ) |
|  | ) |
|  | ) |
| *Defendant(s)* | ) |

## SEALED CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __8-18-21, 11-22-21, & 12-2-21__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |
| Title 21, United States Code, Section 846 | Conspiracy to Distribute a Controlled Substance |

This criminal complaint is based on these facts:
See Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Kathryn Kelly, FBI Special Agent
*Printed name and title*

Sworn before me in accordance with Fed. R. Crim. P. 4.1 by telephone.

Date: 12/3/2021

_____
Patrick M. Hunt
*Judge's signature*

City and state: Fort Lauderdale, Florida

United States Magistrate Judge
*Printed name and title*

## SEALED AFFIDAVIT

I, Kathryn Kelly, being duly sworn, do hereby depose and state:

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Special Agent with the Federal Bureau of Investigation since May 2019. I am currently assigned to the Miami Field Office of the FBI, specifically to the Broward County Safe Streets Task Force. Prior to becoming a Special Agent, I was a Staff Operations Specialist with the FBI in Los Angeles for approximately five years. I have received training from the FBI relating to the methods used by narcotics traffickers to import and distribute narcotics.

2. This Affidavit is based upon my personal knowledge, as well as on information provided to me by Florida Highway Patrol ("FHP") and other law enforcement officers and agencies. I believe that this affidavit sets forth facts that establish probable cause to believe that on on August 18, 2021, November 22, 2021, and December 2, 2021, in Broward County, in the Southern District of Florida, **Marcos Rene SOTO** ("**SOTO**") violated Title 21, United States Code, Section 841(a)(1), which makes it unlawful for a person to possess with intent to distribute a controlled substance and violated Title 21, United States Code, Section 846, which makes it unlawful to conspire to distribute a controlled substance. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, your affiant has not included every fact known about this investigation, but rather, only those facts necessary to establish probable cause.

## **PROBABLE CAUSE**

3.  In July 2020, an Undercover Officer ("UCO") was introduced to a female named Carolina F HERRERA Soriano ("HERRERA"). At the meeting, HERRERA informed the UCO that the UCO could reach out to HERRERA directly to set up future purchases of narcotics. Beginning in August 2020, the UCO began communicating with HERRERA directly.

4.  On or about August 18, 2021 at approximately 7:14 p.m. the UCO met with HERRERA near a Walmart located at 2300 W Atlantic Boulevard, Pompano Beach, Florida. During the meeting, HERRERA entered the UCO's vehicle and, in exchange for $1,400, HERRERA gave the UCO two plastic baggies containing approximately two ounces of a solid crystal-like substance, which later field tested positive for methamphetamine.

5.  During the meeting, the UCO asked HERRERA if she had larger pieces of product (referencing narcotics) because HERRERA had indicated that she had in a photograph she sent to the UCO prior to the meeting. HERRERA attempted to call her source of supply to inquire about obtaining the larger pieces, and the UCO surreptitiously observed a first and last name of the individual she attempted to call on her phone screen. The name the UCO saw was "Marcos Soto." As explained later in this affidavit, law enforcement positively identified "Marcos Soto" as **SOTO**. Law enforcement has also identified the vehicle that **SOTO** operates and the residence that **SOTO** resides in.

6.  HERRERA exited the UCO's vehicle at approximately 7:24 p.m. and the UCO left the area. The meeting was audio and videotaped.

7. After HERRERA and the UCO parted ways, HERRERA called the UCO and told the UCO to meet HERRERA and her source of supply at a restaurant to get larger pieces. The UCO declined to do so at that moment in time.

8. Surveillance followed HERRERA from the meeting location to La Casita Salvadorena, a restaurant located at 1319 E Commercial Boulevard in Oakland Park, Florida. I observed an unknown male, who matched the height, weight, and general description of the person law enforcement later identified as **SOTO**. This male exited the restaurant and walked to HERRERA's vehicle. HERRERA parked and exited the vehicle to speak with the male at approximately 7:41 p.m. Surveillance photos show HERRERA standing next to the male matching **SOTO's** description with what appears to be money in his hand. The photos are grainy quality, but based on my observations of the meeting, as well as the fact that HERRERA invited the UCO to meet with her and her supplier at a restaurant, I believe that the HERRERA met with **SOTO** outside of the restaurant.

9. On or about November 19, 2021, HERRERA sent the UCO a video via text message. The video, which I viewed, depicts a large Ziploc bag filled with a solid crystal-like substance that I believe, based on my training and experience, to be methamphetamine. After viewing the video, the UCO placed a call to HERRERA on the TARGET CELLPHONE and confirmed that HERRERA had methamphetamine for sale. Specifically, HERRERA informed the UCO that she had a kilogram available for $10,000. The UCO then requested to purchase two ounces of methamphetamine on the date of November 22, 2021. During this call, HERRERA informed the UCO that the methamphetamine in the video was from the same supplier that provided

the methamphetamine during the August 18, 2021 controlled purchase (**SOTO**).

10. On or about November 22, 2021, the UCO and HERRERA confirmed a meeting for that day for the UCO to purchase two ounces of methamphetamine in exchange for $1,400. The UCO and HERRERA agreed to meet in the Walmart parking lot located at 2300 W Atlantic Boulevard, Pompano Beach, Florida. At approximately 2:48 p.m., HERRERA informed the UCO that her source of supply did not want to meet at the Walmart. At approximately 2:59 p.m. HERRERA told the UCO to meet at 541 E Sample Road, Pompano Beach, Florida. At approximately 3:29 p.m., HERRERA told the UCO that she was in the parking lot, waiting for her supplier.

11. At approximately 3:40 p.m., the UCO met with HERRERA at the 541 E Sample Road, Pompano Beach, Florida. During the meeting, HERRERA entered the UCO's vehicle carrying a black bag. HERRERA removed a large plastic bag containing approximately one kilogram of a solid crystal-like substance from the black bag to show the UCO. HERRERA also gave the UCO clear plastic bags and allowed the UCO to measure out approximately one ounce of the solid crystal-like substance to place in each of the plastic bags, in exchange for $1,500. Although, HERRERA and the UCO initially agreed on a price of $1,400, HERRERA asked for $1,500 at the time of the buy. The UCO bought the suspected methamphetamine and gave $1,500 to HERRERA. HERRERA then placed the remaining suspected methamphetamine, which was in a large plastic bag, into a black bag. HERRERA exited the UCO's vehicle with the black bag containing the remaining suspected methamphetamine at approximately 3:53 p.m. and the UCO left the area. The

crystal-like substance later field-tested positive for methamphetamine. The meeting was audiotaped and videotaped.

12. After the meeting, the UCO left the parking lot while law enforcement continued surveillance of HERRERA following the transaction. Within five minutes, law enforcement observed HERRERA enter a black Ram pickup truck bearing Florida tag QSZP71, carrying the black bag she had used to carry the suspected methamphetamine into the UCO vehicle. After a few minutes, HERRERA exited the vehicle with the black bag, and left the meeting location.

13. At that time, law enforcement continued surveillance of the black Ram pickup truck. Law enforcement positively identified the driver of the black Ram pickup truck as **SOTO**. The black Ram pickup truck is registered to **SOTO** and a person that appears to be related to **SOTO** because they share the same last name.

14. During a debrief of the UCO, HERRERA called the UCO. During this telephone conversation, HERRERA told the UCO that her supplier had approximately two kilograms of methamphetamine available, but that the supplier had already sold six kilograms.

15. Based on this information, I believe that **SOTO** was HERRERA's source of supply of methamphetamine for the methamphetamine that was sold to the UCO on August 18, 2021 and November 22, 2021.

16. On November 30, 2021, HERRERA called the UCO and agreed to sell the UCO two kilograms of methamphetamine on December 2, 2021. HERRERA confirmed that her source of supply was still in possession of two kilograms of methamphetamine, and the UCO told HERRERA that the UCO intended to purchase

both.

17. On December 1, 2021, the UCO telephonically spoke with HERRERA and told her that he was bringing money to purchase 1 kilo of methamphetamine, and after purchasing the 1 kilogram of methamphetamine, he was going to meet with his cousin to get the rest of the money to purchase the second kilogram of methamphetamine.

18. On December 1, 2021, a stationary surveillance vehicle was set up with a view of **SOTO**'s known residence ("TARGET LOCATION").

19. On December 2, 2021, around 8:00 a.m., the UCO spoke to HERRERA over the phone. During this call, HERRERA informed the UCO that her supplier was in the hospital. HERRERA advised the UCO that she would still be able to sell the UCO the methamphetamine they had discussed previously, but that someone else would bring HERRERA the drugs.

20. On December 2, 2021, at approximately 9:30 a.m., surveillance units set up on the TARGET LOCATION in addition to the stationary surveillance vehicle. At approximately 12:22 p.m., a white Toyota four door sedan ("Toyota sedan"), Florida license plate QLPZ99, known by law enforcement to be used by HERRERA based on past law enforcement investigations and operations, drove to the TARGET LOCATION. HERRERA was identified as driving the Toyota sedan. She was alone in the vehicle.

21. An individual, later identified as Dante Uriel OLIVA ("OLIVA"), exited the TARGET LOCATION and approached HERRERA in the Toyota sedan carrying a package in his hand. OLIVA had a package in his hand. The package was

contained within a plastic shopping bag that was partially translucent.

22. OLIVA put the package in the passenger side of the Toyota sedan, and he returned to the TARGET LOCATION. Law enforcement then observed HERRERA drive away in the Toyota sedan from the TARGET LOCATION. She was alone driving the vehicle. Law enforcement maintained roving surveillance of the Toyota sedan.

23. At approximately 12:35 pm., Broward Sheriff's Office (BSO) CORE Unit conducted a traffic stop of HERRERA as she was driving west on Sample Road from Dixie Highway in Pompano Beach, Florida for committing the traffic violation of failing to obey a traffic control device. During the traffic stop, a narcotics sniffing canine alerted to HERRERA's vehicle. BSO conducted a probable cause search of the vehicle.

24. Inside the vehicle, on the front passenger seat, next to HERRERA's purse, law enforcement found a gallon sized Ziploc bag, inside the plastic shopping bag. Inside the Ziploc bag was approximately 1 kilogram of suspected methamphetamine. The substance field tested positive for methamphetamine.

25. The agent who observed OLIVA place the package in the Toyota sedan after leaving with the package from within inside the TARGET LOCATION positively identified the package in the Toyota sedan as coming from within the TARGET RESIDENCE.

26. After HERRERA was removed from the vehicle, HERRERA asked an officer on scene if she would have a bond. The officer replied that he did not know what her charges were, to which she responded, "I have a key of ice in the car." This was recorded on body cam footage. HERRERA also told investigators that her

supplier was in the hospital.

27. The above-mentioned narcotics were transported to the FBI Miami Field Office, located at 2030 SW 145th Avenue, Miramar, Florida for processing. The methamphetamine seized is approximately 1,007.9 grams.

28. After speaking with investigators, HERRERA agreed to place a consensually monitored call to OLIVA. HERRERA informed OLIVA that she had the money, but that there was a problem with her car and she needed OLIVA to pick her up. OLIVA replied that he had other things to do, and to call uncle, referencing **SOTO**. HERRERA then placed a second consensually monitored call to **SOTO**. HERRERA told **SOTO** that she had the money, but that there was a problem with her car and she needed to be picked up. **SOTO** told HERRERA that OLIVA was busy. After some time, **SOTO** called HERRERA, the call was consensually monitored. **SOTO** told HERRERA that OLIVA was on his way.

29. Law enforcement observed OLIVA exit the TARGET LOCATION and enter a sedan with Florida license plate LIKB76. OLIVA is the registered owner of this vehicle. Law enforcement continued surveillance of OLIVA as he drove away from the residence. The BSO CORE Unit conducted a car stop of OLIVA and effectuated a probable cause arrest based on the above.

30. Law enforcement seized OLIVA's phone pursuant to the arrest. While officers were holding the phone, a notification appeared on the home screen. While the phone was still locked, a message from "Marcos Soto" appeared as a notification. The full body of the message was readable on the home screen. The message, which was in Spanish, asked OLIVA if he had "organized the money." Based on my

training and experience, and knowledge of this investigation, I believe that **SOTO** directed OLIVA to pick up money from HERRERA.

31. On December 2, 2021 the Honorable Patrick M. Hunt, United States Magistrate Judge, Southern District of Florida, signed an order authorizing a search of the TARGET LOCATION. During the search, law enforcement found approximately 866.9 grams of suspected methamphetamine and two handguns in a room believed to belong to **SOTO**. Also in the room were multiple bottles of medication with **SOTO**'s name on them, and well as mail addressed to **SOTO**. **SOTO**'s sister, who also resides at the TARGET LOCATION, identified that room as **SOTO**'s room. The methamphetamine later field tested positive for methamphetamine.

32. Law enforcement identified the hospital where **SOTO** was located as Florida Medical Center, located at 5000 W Oakland Park Boulevard, Lauderdale Lakes, Florida. Law enforcement effectuated a probable cause arrest of **SOTO**, and they attempted to seize his phones pursuant to the arrest. Nurses told law enforcement officers that **SOTO** had attempted to destroy two phones by breaking them and disposing of them in medical trash. Law enforcement found the phones and seized them.

[INTENTIONALLY LEFT BLANK]

## **CONCLUSION**

33. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that on on August 18, 2021, November 22, 2021, and December 2, 2021, in Broward County, in the Southern District of Florida, **Marcos Rene SOTO** ("**SOTO**") violated Title 21, United States Code, Section 841(a)(1), which makes it unlawful for a person to possess with intent to distribute a controlled substance and violated Title 21, United States Code, Section 846, which makes it unlawful to conspire to distribute a controlled substance.

FURTHER AFFIANT SAYETH NAUGHT.

_____
KATHRYN KELLY
Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me by telephone
this 3rd day of December, 2021.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE